## EQUITABLE LIFE INSURANCE COMPANY OF IOWA *v.* HEBERT ET AL.

[No. 5,560. Filed February 21, 1906.]

1. INSURANCE. — *Suicide.* — *Presumptions.*—*Burden of Proof.*— Suicide can not be presumed from death in an unknown manner where it is possible that such death might be due to negligence, accident or mistake, the burden of proving suicide being upon the insurance company alleging it as a defense. p. 374.

2. SAME.—*Suicide.*—*Evidence.*—Where the evidence showed that decedent was found dead with a bottle partly filled with carbolic acid in his vest pocket and a large bottle of same diluted with water near or under the body; that he had procured such acid for the purpose of a face wash to cure some pimples, the evidence of the presence of such acid in the mouth and stomach being in conflict; that he had previously suffered a sunstroke, and the day he died was excessively warm, the question of suicide was one of fact for the jury. p. 375.

From Allen Circuit Court; *E. O'Rourke,* Judge.

Action by Oliver Hebert and another against the Equitable Life Insurance Company of Iowa. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*P. B. Colerick,* for appellant.

*Breen & Morris,* for appellees.

ROBINSON, J.—Appellees sued upon a policy of insurance issued upon the life of Oliver J. Hebert, on December 8, 1902. The assured was found dead July 28, 1903. The policy contained a provision "that should the assured within two years from date thereof take his own life, whether sane or insane, any policy issued thereon should become void, and all payments made thereon should be forfeited to said company." The sufficiency of the evidence to sustain the verdict, the excluding of certain testimony offered, and the giving of a certain instruction are the only questions argued by appellant's counsel. .

Self-destruction can not be presumed from the mere fact of death in an unknown manner. The strong instinctive love of life and the uniform efforts of men· to pre-

1.    serve life will not permit á presumption of suicide where death may have resulted from accident or mistake. Appellees were entitled to recover unless appellant has by competent evidence overcome this presumption. If the facts are such that death might have resulted from accident, mistake or suicide, the presumption is against suicide. If the accused committed suicide, the law was against appellees, because the policy by its terms did not cover self-destruction, whether assured at the time was sane or insane. As the defense of suicide was relied upon, the burden of proving it was upon the appellant. See *Travelers Ins. Co.* v. *McConkey* (1888), 127 U. S. 661, 32 L. Ed. 308, 8 Sup. Ct. 1360; *Leman* v. *Manhattan Life Ins. Co.* (1894), 46 La. Ann. 1189, 15 South. 388, 49 Am. St. 348; *Walcott* v. *Metropolitan Life Ins. Co.* (1891), 64 Vt. 221, 24 Atl. 992, 33 Am. St. 923; *Supreme Council, etc.,* v. *Brashears* (1899), 89 Md. 624, 43 Atl. 866, 73 Am.

St. 244; *Meadows* v. *Pacific Mut. Life Ins. Co.* (1895), 129 Mo. 76, 31 S. W. 578, 50 Am. St. 427; *Streeter* v. *Western Union, etc., Soc.* (1887), 65 Mich. 199, 31 N. W. 779, 8 Am. St. 882; *Cronkhite* v. *Travelers Ins. Co.* (1889), 75 Wis. 116, 43 N. W. 731, 17 Am. St. 184; *Mallory* v. *Travelers Ins. Co.* (1871), 47 N. Y. 52, 7 Am. Rep. 410; *Hale* v. *Life Indemnity, etc., Co.* (1895), 61 Minn. 516, 63 N. W. 1108, 52 Am. St. 616.

The defense was that the assured took carbolic acid with suicidal intent. The deceased was found dead on the bank of a railroad right of way, lying on his back at full length, his feet crossed at the ankles, one hand at his side and the other across his breast; in his vest pocket was a small vial containing carbolic acid, the contents of which were about half gone; and near or under the body was a large bottle containing a solution of carbolic acid and water. The appearance of the face did not indicate that there had been any severe pain preceding death. There was a post-mortem examination held, and the testimony of the physicians was directly contradictory as to the presence of carbolic acid in the stomach, as was also the evidence as to whether the mouth showed the use of carbolic acid. There is evidence that the assured had some pimples on his face, and that his mother had advised him to wash it with a solution of carbolic acid; that on the morning of his death he went to a drug store and purchased ten cents worth of carbolic acid, secured a large bottle and filled it with a mixture of the acid and water; that the day on which he died was an excessively warm day; that he had received a sunstroke a few weeks before he died, and that his physical condition was such that he might easily have succumbed to the excessive heat.

We have not undertaken to give the substance of all the testimony, but to show that while there are indications that point to suicide, there are other facts and circumstances not consistent with that theory. The evidence relied upon

to establish suicide was circumstantial, and in such case it should be sufficient to exclude, with reasonable certainty, any other cause of death. Although the evidence was contradictory as to the presence of carbolic acid in the stomach, and as to whether the mouth indicated the use of the acid, still if the evidence had shown, without dispute, that the acid was used and death resulted, the death might have resulted from accident or mistake, and this would be the presumption as against suicide. "When the dead body of the assured is found under such circumstances and with such injuries that the death may have resulted from negligence, accident, or suicide, the presumption is against suicide, as contrary to the general conduct of mankind, a gross moral turpitude not to be presumed in a sane man; and whether it was from one or the other, if there is any evidence bearing upon the point, is for the jury; as, for instance, whether the taking of an overdose of laudanum was intentional or by mistake." May, Insurance (4th ed.), §325.

But, as stated, there was evidence that there was no indication of the presence of the acid in the stomach, nor did the mouth necessarily indicate that it had been used. The credibility of the witnesses was a question for the jury. It can not be said that there is no evidence to support the conclusion they reached. Whether the assured committed suicide was to be determined as any other question of fact. Upon a careful consideration of the evidence we do not find it such as authorizes us to disturb the verdict. See *Travelers Ins. Co.* v. *Nitterhouse* (1894), 11 Ind. App. 155; *Phillips* v. *Louisiana, etc., Life Ins. Co.* (1874), 26 La. Ann. 404, 21 Am. Rep. 549; *Hale* v. *Life Indemnity, etc., Co., supra; Leman* v. *Manhattan Life Ins. Co., supra; Michigan Mut. Life Ins. Co.* v. *Naugle* (1891), 130 Ind. 79; *Northwestern, etc., Ins. Co.* v. *Hazelett* (1886), 105 Ind. 212, 55 Am. Rep. 192; *Supreme Lodge, etc.,* v. *Foster* (1901), 26 Ind. App. 333; *Cochran* v. *Mutual Life Ins.*

*Co.* (1897), 79 Fed. 46; *Ingersoll* v. *Knights of Golden Rule* (1891), 47 Fed. 272; *Supreme Lodge, etc.,* v. *Beck* (1899), 94 Fed. 751, 36 C. C. A. 467.

The correctness of the tenth instruction is questioned, but what we have already said concerning the presumption that the assured took his own life is applicable to the only question raised as to this instruction. We find no error in the record for which the judgment should be reversed.

Judgment affirmed.